IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:12-cr-58 |
| | ) | |
| vs. | ) | DEFENDANT'S |
| | ) | SENTENCING MEMORANDUM |
| JOHN FRANCIS HOLTSINGER, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     THE CORRECT LOSS AMOUNT FOR PURPOSES OF THE GUIDELINES
          CALCULATION IS BETWEEN $400,000.00 AND $1,000,000.00, AS AGREED
          TO BY THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    THE DEFENDANT'S POST-INDICTMENT BEHAVIOR WARRANTS THE
          REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY, AS AGREED TO
          BY THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    III.   A SENTENCE WITHIN THE RECOMMENDED RANGE AGREED TO BY
          THE PARTIES IS A SUFFICIENT SENTENCE, BUT ONE NOT GREATER
          THAN NECESSARY, AFTER CONSIDERING THE TITLE 18 U.S.C. §
          3553(a) FACTORS DUE TO THE CIRCUMSTANCES OF THE CASE AND
          THE DEFENDANT'S HISTORY AND CHARACTERISTICS . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**INTRODUCTION**

     Mr. Holtsinger respectfully asks the court to accept the agreement between the parties and sentence him within the agreed-to range. The parties agree that the loss-amount adjustment should be 14 levels, rather than 16 as in the PSR. In addition, the parties agree that the adjustment for

acceptance of responsibility should apply in this case due to the defendant's prompt decision to plead guilty and his positive post-indictment behavior. Mr. Holtsinger would ask the court to consider a sentence toward the middle or low end of the range agreed to by the parties, due to the circumstances of the case, and the defendant's history and characteristics.

**ARGUMENT**

**I.   THE CORRECT LOSS AMOUNT FOR PURPOSES OF THE GUIDELINES CALCULATION IS BETWEEN $400,000.00 AND $1,000,000.00, AS AGREED TO BY THE PARTIES.**

The government and the defendant have agreed to recommend to the court that the correct loss amount in this case is $948,239.67. *See* Letter Memorializing Agreement Between Parties. This amount takes into account the PSR's calculation in large part, but makes certain adjustments as outlined in the letter between the parties. *See Id.* The adjustments to the PSR loss amount are based on factors that were not available to the PSR writer in preparing the report. *See Id.* The loss amount agreed to by the government and the defendant would result in an specific offense characteristic (SOC) adjustment of 14 levels, rather than the 16-level adjustment in the PSR Guidelines calculation. (PSR ¶ 54).

**II.  THE DEFENDANT'S POST-INDICTMENT BEHAVIOR WARRANTS THE REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY, AS AGREED TO BY THE PARTIES.**

The parties have also agreed that the SOC for acceptance of responsibility (AOR) should apply in this case. The PSR assesses a two-level adjustment for obstruction of justice, an adjustment that the defendant agreed to in the plea agreement. (PSR ¶¶ 12, 23, 52). The PSR does not recommend an adjustment for AOR, but does not offer any support for this position. (PSR ¶¶ 65; Response to Government's Objections). Presumably, the PSR writer's reasoning reflects the Guidelines' general rationale that "conduct resulting in an enhancement under USSG § 3C1.1

ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1, comment. (n.4).  But the language of the application note also indicates that in certain extraordinary cases the adjustment of AOR will apply even when the obstruction enhancement is applicable.  USSG § 3E1.1, comment. (n.4).  The defendant submits that the totality of the circumstances in this case support the adjustment for AOR. *See United States v. Honken*, 184 F.3d 961, 968, 969 (8th Cir. 1999).

The defendant concurs with the government's reasons for recommending the AOR adjustment as reflected in its response to the first draft of the PSR.  The defendant indicated early on this complex case his willingness to plead guilty, saving the government time and resources. *See* USSG § 3E1.1, comment. (n.1(H)).   The defendant also truthfully admitted to the conduct comprising the offense of conviction, and agreed to a specific loss and restitution amount, both of which saved the government valuable time and resources, and served the victims' and the public's interest in a prompt and certain disposition of this matter.  *See Id.* at (n.3).  In addition, the charges to which Mr. Holtsinger pled guilty are not mandatory detention cases as defined 18 U.S.C. § 3143(a) and (b).  Mr. Holtsinger agreed to waive any argument he might have regarding release pending sentencing, a additional measure of his acceptance of responsibility.

In addition, the defendant admitted early on to the obstructive conduct, the conduct occurred prior to his indictment, and did not involve threats. *See United States v. Honken*, 184 F.3d at 968. There is no "magic formula" for defining "extraordinary case." *Id* at 968.  A district court's decision on this issue is entitled to "great deference." USSG § 3E1.1, comment. (n.5).

The totality of the circumstances support the parties recommendation to the court that three-level reduction for AOR applies in this case.

With the correct loss amount SOC adjustment (14) as referred to above, coupled with the

3

three-level reduction for AOR, the TOL would be 26.  With a CHC of IV, the resulting advisory Guideline range is 93 to 115 months.  The parties have agreed to recommend to the court a sentencing range of 46 to 87 months.

> **III.   A SENTENCE WITHIN THE RECOMMENDED RANGE AGREED TO BY THE PARTIES IS A SUFFICIENT SENTENCE, BUT ONE NOT GREATER THAN NECESSARY, AFTER CONSIDERING THE TITLE 18 U.S.C. § 3553(a) FACTORS DUE TO THE CIRCUMSTANCES OF THE CASE AND THE DEFENDANT'S HISTORY AND CHARACTERISTICS.**

Mr. Holtsinger submits that a sentence at the low end or in the middle of the agreed-to sentencing range is a sufficient sentence after considering the 3553(a) factors.  This conclusion is supported by many factors, including the circumstances of the case and the defendant's history and characteristics which include: (1) his advanced education and career as a soft-ball coach; (2) his timely acceptance of responsibility; (3) his family and community support; (4) his lack of a similar criminal history; (5) his exemplary conduct while on pretrial release; (6) and the need for the prompt satisfaction of his restitution obligations.

The general goals of sentencing require consideration of "the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. §3553(a)(2).  The court must also consider "the kinds of sentences available," the sentencing guidelines and relevant policy statements, the need to avoid sentencing disparities, and the need to provide restitution to any victim.  18 U.S.C. §3553(a)(3)-(7).

Mr. Holtsinger is 52 years old, and was born and raised in Ottumwa, Iowa. (PSR ¶¶ 95, 103).  He described his life to the PSR writer as "Norman Rockwellish," by which he meant that he had

a good upbringing. (PSR ¶ 95). His father worked at John Deere and his mother was a home-maker. (PSR ¶¶ 97, 98). His mother suffered a stroke when the defendant was in seventh grade, and she eventually received shock treatment therapy for depression that appears to have been caused by complications from the stroke. (PSR ¶ 95). In high school in Ottumwa the defendant participated in band, baseball, football, basketball and track. (PSR ¶ 95). He graduated from Ottumwa High School in 1978 with a 3.67 GPA, ranking him 72nd out of 467 students. (PSR ¶ 112). He received a bachelor's degree in business administration from the University of Iowa in 1982, and he attended law school during two different semesters in the eighties. (PSR ¶ 113). He eventually dropped out of law school to care for his father who had heart problems. (PSR ¶¶ 97,113).

As an adult, the defendant lived in Chicago, Illinois, and he worked at the Chicago Mercantile Exchange. He returned to Ottumwa in 1995, and he coached girls softball for many years. (PSR ¶ 116). He coached and mentored many young woman, many of whom went on to receive college scholarships. Mr. Holtsinger cared for his ill mother for many years until her death in 2011. (PSR ¶ 98). Mr. Holtsinger has many friends in the Ottumwa area, in particular he has the support of his aunt and Chris Keasling. *See* Defendant's Exhibit A.

Mr. Holtsinger is also a father to Sydney Hunt ( age 11). (PSR ¶ 102). While he does not have custody, he visits with her frequently. (PSR ¶ 102). A lengthy prison sentence would essentially remove her from his life while she reaches important milestones to becoming an adult. He is acutely aware that the acts that have led to his punishment will also remove him from his daughter's life. The pending separation from his daughter has weighed heavily on the defendant, and serves as a strong deterrent for him to avoid future criminal behaviors.

Mr. Holtsinger's support by members in the community in Ottumwa, and the relationship with his daughter, bode well for his chances for success while on supervision. These anchors will

help him re-integrate into society after prison, and will provide the structure he will need to help find employment so that he can fulfill his restitution obligation. A lengthy prison sentence would also hamper his ability to promptly fulfill his significant restitution obligations.

Probation has indicated that Mr. Holtsinger has complied with all the conditions of pretrial release. (PSR ¶ 13). He resided at the Fort Des Moines halfway house during the pendency of this case, but pursuant to the plea agreement, he went into custody after his plea of guilty in October of 2012. (PSR Release Status).

Mr. Holtsinger does not have a criminal history involving violence or drugs. (PSR ¶¶ 69-80). He has no fraud-related criminal convictions. (PSR ¶¶ 69-80). The criminal history he has is exclusively for alcohol related offenses, or for driving offenses that stemmed from the license restrictions associated with those offenses. (PSR ¶¶ 69-80). The record reflects that the defendant struggled with alcoholism though-out the time period of the offense conduct, and before. (PSR ¶¶ 69-80). The defendant's struggle with alcohol abuse continued until his arrest in this case, which is reflected by the two drunk driving charges pending at that time. (PSR ¶¶ 79-80). The defendant would ask the court to recommend to the BOP that he receive the intensive residential drug and alcohol program (RDAP) while in custody.

Mr. Holtsinger's alcoholism appears to have contributed to a down-ward spiral professionally. He once had great potential as an investor, and he successfully invested his own funds for many years. But around the year 2000 he began his struggle with alcoholism, which is reflected in his criminal history. (PSR ¶¶ 74-80). It is significant that the period of time covering the offense conduct coincides with his substance abuse problems. While not an excuse, the alcoholism helps explain the offense conduct in this case. His investment ventures became more and more murky. His better judgment appears to have faltered, no doubt aggravated by the

alcoholism. The defendant would ask the court to consider this factor in determining an appropriate sentence.

Another factor the court is to consider under § 3553(a) in determining a sufficient sentence is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Mr. Holtsinger submits that a sentence at the low or middle of the agreed-to range would be consistent with the sentences in other fraud cases in this district.

The defendant is not in need of a lengthy prison sentence to adequately deter him from future criminal conduct. The stigma attached to receiving a felony conviction and the collateral consequences that go with it, including the loss of the ability to vote, and the general approbation of society regarding cases of this nature, more than adequately address any concerns regarding sufficient deterrence.

General deterrence will be served just as effectively by a sentence at the low end or in the middle of the agreed-to range. To other experienced investors who might be tempted to engage in similar behavior, the fact that Mr. Holtsinger has received a prison sentence at all will be a deterrent. In *United States v. Adelson*, 441 F.Supp.2d 506, 514 (8th Cir. 2006), the court addressed the question of general deterrence and observed:

> "But as to the latter [general deterrence] there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar offenders.' See, e.g., *Richard Frase Punishment Purposes*, 58 Stanford Law Review 67, 80 (2005); Elizabeth Szockyj, *Imprisoning White Collar Criminals*?, 23 S. Ill. U. L. J. 485, 492 (1998). Cf. U.S. Sentencing Commission, 15 Years of Guideline Sentencing, 56 (2004) (noting that the Sentencing Guidelines were written, in part, to 'ensure a **short but definite** period of confinement for a larger portion of these white collar cases, both to ensure proportionate punishment and to achieve deterrence.') (emphasis supplied) . . . .
>
> There is a lack of empirical support for the proposition that longer sentences prevent

recidivism. Barron, Evans, and Coffin, *Sentencing by Statute*, pgs. 7-10, February, 28, 2009. Barron, Evans, and Coffin note, "in one of the best studies of specific deterrence, which involved federal white collar offenders in the pre-Guideline era, no difference in deterrence was found even between probation and imprisonment. See David Weisburd, et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995).

The defendant will also be on supervised release for up to three years following his release from incarceration. In *Gall v. United States*, 128 S.Ct. 586, 595 (2007), the Supreme Court recognized that offenders on probation or supervised release are subject to substantial restrictions on their liberty, including provisions requiring that they may not leave the district, move or change jobs without notifying their probation officer, report regularly to their probation officer, prevent unannounced visits to their homes, and refrain from associations with certain persons. While on supervised release, the defendant will undoubtedly be subject to all of these conditions, plus additional conditions requiring him to submit to financial examinations and to report financial transactions above a certain amount. In addition, the defendant will be ordered to pay restitution. Paying restitution will be a significant burden for the defendant during his period of supervised release and thereafter.

The offense conduct and the conviction in this case will prevent Mr. Holtsinger, for all practical purposes, from working in the stock and investment trading field in the future. He has a college degree from a reputable college, and he has worked successfully in business, factors which bode well for his chances for finding employment upon his release. But he will be faced with the daunting prospect of paying his restitution at a time when his employability is hampered due to his behaviors that led to this charge. These collateral consequences mitigate against the need for further deterrence through incarceration.

## CONCLUSION

For all these reasons, Mr. Holtsinger respectfully asks the court to impose a sentence at the low or middle of the recommended range of the parties. Such a sentence is sufficient but not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553(a).

    /s/ Timothy S. Ross-Boon
TIMOTHY S. ROSS-BOON

FEDERAL DEFENDER'S OFFICE
400 Locust Street
Suite 340, Capital Square
Des Moines, Iowa 50309-2353
TELEPHONE:  (515) 309-9610
TELEFAX:  (515) 309-9625
E-MAIL: timothy_rossboon@fd.org

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2013, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
    /s/ Timothy S. Ross-Boon