IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 4:09-cr-131 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| JOHN FRANCIS HOLTSINGER, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

The United States of America, by the undersigned Assistant United States Attorney,

hereby submits this Sentencing Memorandum, and states as follows:

## TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SENTENCING PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.     STATEMENT REGARDING RULE 11(c)(1)(C) PLEA AGREEMENT . . . . . . . . . 3

IV.     STIPULATIONS REGARDING LOSS AMOUNT AND RESTITUTION . . . . . . . .6

V.     ARGUMENT: THE COURT SHOULD IMPOSE A SENTENCE OF 87 MONTHS'
        IMPRISONMENT, TO BE SERVED CONSECUTIVELY TO THE
        DEFENDANT'S RECENT FIVE-YEAR STATE COURT SENTENCE FOR
        OPERATING WHILE INTOXICATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I.     INTRODUCTION

John Holtsinger operated a long-running Ponzi scheme that defrauded many of his friends

and neighbors out of their entire life savings. He then compounded the misconduct by attempting

to persuade those victims to lie to federal authorities. The government urges the Court to accept

the Rule 11(c)(1)(C) Plea Agreement and impose a sentence at the high end – 87 months – of the agreed-upon range.  The government further requests that the Court impose the federal sentence <u>consecutive</u> to the five-year sentence Holtsinger recently received on state charges for Operating While Intoxicated.  Finally, the government requests restitution to the victims in the amount of $948,239.67.

## II.   SENTENCING PROCEDURE.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).  To the extent there are any disputes regarding the presentence report or other matters, a district court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3).

Once the district court has resolved all disputed matters and determined the applicable Guidelines range, the court must give both sides an opportunity to argue for whatever sentence they deem appropriate.  *Gall*, 128 S. Ct. at 596.  "[T]he district court should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party.  *Id.*  The Court should not presume that the Guidelines range is reasonable but should instead "make an individualized assessment based on the facts presented."  *Id.* at 597.  "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Id.*  "After settling on the appropriate sentence, [the district judge] must

adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Id.*

"Guidelines departures and post-*Booker* variances are different.  There may well be cases that would not justify a departure under the Guidelines but which would justify a variance." *United States v. Myers*, 503 F.3d 676, 684 (8th Cir. 2007) (internal citation and punctuation omitted).  "Factors ordinarily considered irrelevant in calculating the advisory guideline range, or in determining whether a guideline departure is warranted, can be relevant in deciding whether to grant a variance."  *United States v. Chase*, 560 F.3d 828, 831 (8th Cir. 2009).

## III.    STATEMENT REGARDING RULE 11(C)(1)(C) PLEA AGREEMENT.

When it entered the Plea Agreement, the government anticipated a Sentencing Guidelines range of 78-97 months.  Accordingly, the government expected that the agreed-upon range in the Plea Agreement of 46-87 months would be high enough to permit the Court to impose a sentence in the middle of the Guidelines range, while also setting a floor that ensured at least four years' imprisonment.  As it turns out, however, the Presentence Investigation Report ("PSR") differed from the government's preliminary calculation in three significant ways: (1) whether to award a three-level reduction for acceptance of responsibility; (2) whether the loss amount exceeded $1 million; and (3) the defendant's criminal history.  These differences are reflected in the following table:

3

| Guidelines Section | Government Expectation/Stipulation | PSR |
|---|---|---|
| USSG §3E1.1 | -3 | 0 |
| USSG §2B1.1(b)(1) | +14 | +16 |
| All other enhancements | +15 | +15 |
| Total Offense Level | 26 | 31 |
| Criminal History Category | III | IV |
| **Guidelines Range** | **78-97** | **151-188** |

The government intends to honor the stipulations in the Plea Agreement, and explains

those stipulations as follows:

*Acceptance of Responsibility.*   The PSR's refusal to make a downward adjustment for

acceptance of responsibility is understandable: Holtsinger tampered with witnesses prior to being

indicted.  *See* USSG §3E1.1, n.4 ("Conduct resulting in an [obstruction of justice] enhancement

ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.").

On the other hand, however, Holtsinger indicated a willingness to plead guilty relatively soon

after being indicted and long before the government needed to undertake any trial preparation.

*See id.* at n.5 ("Entry of a guilty plea prior to the commencement of trial combined with

truthfully admitting the conduct comprising the offense of conviction . . . [and] any additional

relevant conduct . . . will constitute significant evidence of acceptance of responsibility for the

purposes of subsection (a).").  Given the nature and complexity of his offense, Holtsinger's

prompt notification saved the government a tremendous amount of time and resources.  *See id.* at

n.1(H) (instructing courts to consider the "timeliness of the defendant's conduct in manifesting

acceptance of responsibility" as one factor in whether to apply the downward adjustment).

Moreover, as part of the Plea Agreement, Holtsinger stipulated to detailed facts and numerous

sentencing enhancements, including some for which he may have had a non-frivolous factual or

legal defense.  This, again, saved the government a substantial amount of time and resources.

Meanwhile, all of Holtsinger's obstructive behavior occurred *prior to* the Indictment.

Thus, while that behavior was abhorrent (and, indeed, resulted in a stipulation in the Plea

Agreement to the two-level enhancement for obstruction of justice), the government believes the

record adequately supports the three-level reduction for acceptance of responsibility.  *See* USSG

§3E1.1, n.4 ("There may, however, be extraordinary cases in which adjustments under both

§§3C1.1 and 3E1.1 may apply.").

*Loss Amount.*  The government stipulated to a loss amount of less than $1 million,

whereas the PSR calculated loss slightly above $1 million.  For reasons set forth in Section IV,

below, the government believes the PSR inadvertently double-counted certain losses and failed

to take into account certain repayments.  Once those matters are taken into account, the loss

amount ends up slightly below $1 million, thus reducing the enhancement from +16 to +14.

*Criminal History*.  At the time of the Plea Agreement, Holtsinger had 4 criminal history

points (i.e., Criminal History Category III), as well as a pending charge of Operating While

Intoxicated.  The government expected a sentence of imprisonment of less than one year and one

month on the OWI charge, thus keeping Holtsinger in Criminal History Category III.  *See* USSG

§4A1.1(b) ("Add **2** points for each prior sentence of imprisonment of at least sixty days. . .").

Holtsinger ended up receiving a sentence of five years' imprisonment, thus moving him into

Criminal History Category IV.  *See id.* at §4A1.1(a) ("Add **3** points for each prior sentence of

imprisonment exceeding one year and one month."). The Guidelines range therefore jumped from 78-97 months to 92-115 months. The government notes, in any event, that the Court has the power to impose the federal sentence consecutive to the state sentence, and urges the Court to do so.

## IV.     STIPULATION REGARDING LOSS AMOUNT AND RESTITUTION.

The government and defense have reached stipulations regarding certain disputed matters in the PSR. *See* Attachment A. These stipulations resolve virtually all of the objections made by the defendant.

*First*, the parties stipulate that $948,239.67 is the appropriate loss amount for both the Sentencing Guidelines calculation and restitution. The parties arrived at this figure by making the following adjustments to the PSR:

> (1) reducing the loss amount for Glenn (Irv) Graver by $50,000 to reflect the fact that Jay Karteus was the source of the $50,000 provided by Mr. Graver to Holtsinger in 2005. Mr. Graver was simply a pass-through. Thus, because the $50,000 is already reflected in the Karteus loss amount, the inclusion of that amount in the Irv Graver loss would constitute double-counting;

> (2) reducing the loss amount for Jay Karteus by $50,000 by treating payments to Mr. Karteus as returns of principal instead of interest; and

> (3) reducing the loss amount for Joan Stiffler and Tim Pyle by $9,300 to reflect cash payments made by Holtsinger to Ms. Stiffler or Mr. Pyle during the charged period.

*Second*, the defendant waives the objections numbered 4, 7, 8, and 9 in his counsel's January 9, 2013, letter to the United States Probation Office. All of these objections relate to loss amount.

**V.     THE COURT SHOULD IMPOSE A SENTENCE OF 87 MONTHS' IMPRISONMENT, TO BE SERVED CONSECUTIVELY TO THE DEFENDANT'S STATE COURT SENTENCE FOR OWI.**

Holtsinger's conduct was egregious, long-running, and victimized friends and neighbors who placed a tremendous level of trust in him.  Those victims almost certainly will never recover from the emotional and financial harm he caused.  The government therefore urges the Court to impose a sentence of 87 months' imprisonment – at the very high end of the agreed-upon range.  The government further requests that the Court impose the sentence consecutive to the five-year sentence Holtsinger recently received on state OWI charges.

A.     Nature and Circumstances of the Offense.

Holtsinger's fraud had a devastating effect on the friends and neighbors who trusted him with their retirement savings.  The damage he inflicted upon them was not merely financial, but also affected their marriages, family relationships, and sense of security.  His scheme lasted many years and was full of lies, deception, and, eventually, witness tampering.  It is, by any metric, a serious offense warranting a lengthy sentence of imprisonment.

Holtsinger had countless opportunities to stop committing fraud and limit the damage to his victims.  He could have declined to take money from new victims.  He could have refused to accept additional "investments" from old victims.  He could have come clean at any time regarding the tremendous financial harm he was imposing on these innocent people.  He chose, instead, to remain silent about that harm and continue soliciting new funds from new victims.

B.     History and Characteristics of the Defendant.

Although he has no criminal history for fraud-related offenses, Holtsinger's history and characteristics weigh in favor of a lengthy sentence of imprisonment.  Holtsinger committed

hundreds of fraudulent acts during the scheme and surely would have been prosecuted sooner

had he not been so clever and manipulative in dealing with his victims. This is his first fraud-

related conviction only because it took so long to catch him, and not because the behavior is

aberrational.

Moreover, there is no excuse for his conduct. Holtsinger surely has the intelligence to

find and hold legitimate employment, yet he chose to spend his time and energy defrauding

others. His history and characteristics support an 87 month sentence.

C.     The Need for the Sentence to Reflect the Seriousness of the Offense,
       Promote Respect for the Law, and Provide Just Punishment for the
       Offense.

In light of the timespan (at least seven years), consequences (approximately $1 million in

actual losses), and abuse of trust involved in Holtsinger's criminal conduct, a lengthy sentence of

imprisonment is essential to reflect the seriousness of the offense and provide just punishment.

The need for the sentence to promote respect for the law further justifies an 87 month sentence of

imprisonment. Although Holtsinger eventually accepted responsibility for his conduct, his

acceptance came only after numerous years of lying to investigators and his victims and

tampering with witnesses. The concessions in the Plea Agreement are more than enough to

reward Holtsinger for his belated decision to come clean; the longest possible sentence within the

confines of that Agreement will ensure that he (and others) have adequate respect for the law in

the future.

D.     The Need for the Sentence to Afford Adequate Deterrence to Criminal
       Conduct.

In *United States v. Martin*, 455 F.3d 1227, 1239-41 (11th Cir. 2006), the Eleventh Circuit

addressed the importance of deterrence in the context of white collar crime. The court noted that

"Congress viewed deterrence as 'particularly important in the area of white collar crime'" when it adopted 18 U.S.C. § 3553(a).  *Id.* at 1240.  Moreover, "[b]ecause economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidates for general deterrence.'" *Id.* (quoting Stephanos Bibos, *White Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L.Rev. 721, 724 (2005)).

Deterrence is especially important for people like Holtsinger who have the intelligence and charisma necessary to gain the trust of others.  People like him will have more opportunities for fraud and therefore need stronger reminders of the consequences of that fraud.  A sentence of imprisonment of 87 months – served consecutive to the state sentence for OWI – will help emphasize to such persons that the law takes financial crimes seriously and will punish offenders accordingly.

E.     The need for the Sentence to Protect the Public From Further Crimes of the Defendant.

There is a tremendous risk of recidivism here.  Holtsinger spent many years lying to, deceiving, and manipulating the people around him.  Those victims appear to have little faith that he will be able to change his ways.  Accordingly, although the government hopes Holtsinger is sincere in accepting responsibility for his conduct, the reality is that a lengthy sentence of imprisonment is the only guaranteed way to protect the community from further deception.

F.     The Kinds of Sentences Available and Applicable Sentencing Range.

As noted above, the 11(c)(1)(C) range of 46-87 months is lower than the range calculated by the PSR.  Thus, although the government believes the agreed-upon range is justified, a sentence at the top of that range will ensure some level of consistency with the Sentencing Guidelines.  Moreover, Holtsinger has not identified any physical or mental problems that might

accompany a term of imprisonment, nor can the government conceive of any reason why further leniency would be appropriate.

> G.   The Need to Avoid Unwarranted Sentencing Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct.

As noted above, the Rule 11(c)(1)(C) Plea Agreement already gives Holtsinger the benefit of a sentencing range that is arguably lower than would otherwise be recommended under the advisory Sentencing Guidelines.  Any further reduction in the sentence below the high end of that agreed-upon range would only create greater disparity between Holtsinger and other defendants who have engaged in similar conduct.

### Conclusion

For the reasons set forth above, the government respectfully requests a sentence of 87 months' imprisonment, to be served consecutively to Holtsinger's state sentence for OWI, and restitution in the amount of $948,239.67.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney


By:    _/s/Stephen H. Locher_
Stephen H. Locher
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: stephen.locher@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2013, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

_X___ECF/Electronic filing     ____Other means

UNITED STATES ATTORNEY

By: /s/ Stephen H. Locher _____